UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | |
|---|---|
| JOHN M. BERRY, JR., | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 3: 09-60-DCR |
| | ) |
| V. | ) |
| | ) |
| MICHAEL J. SCHMITT, in his official | ) **MEMORANDUM OPINION** |
| capacity as Chair of the Kentucky Bar | ) **AND ORDER** |
| Association Inquiry Commission,[1] | ) |
| | ) |
| Defendant. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on cross motions for summary judgment. [Record Nos. 20, 22] Plaintiff John M. Berry, Jr., argues that Kentucky Supreme Court Rule 8.2(a) is unconstitutional on its face and as applied to him. The defendant, chair of the Kentucky Bar Association Inquiry Commission, maintains that: (i) Berry does not have standing to assert those claims, (ii) the claims are not ripe, and (iii) the rule is constitutional because it is narrowly-tailored to serve a compelling state interest. For the reasons explained below, the Court will grant the defendant's motion with respect to Berry's facial challenge. However, the Court lacks subject-matter jurisdiction over Berry's as-applied challenge to Rule 8.2(a) and, therefore, must dismiss that count.

---

1   As indicated in the Reply in Support of Defendant's Motion for Summary Judgment, the defendant named in the Complaint, Reed N. Moore, has since been replaced as chair of the Inquiry Commission by Michael J. Schmitt. [*See* Record No. 32, p. 1 n.1] Because Moore was sued in his official capacity, Schmitt, as his successor, has been substituted as a party pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

**I.**

The basic facts underlying this matter are not disputed. The case arises out of an October 5, 2007, letter from Berry to the Kentucky Legislative Ethics Commission ("KLEC"). The letter criticized the KLEC's handling of a complaint that alleged fundraising irregularities by Kentucky Senate President David Williams. On August 14, 2007, the KLEC held a preliminary inquiry into the allegations set forth in the complaint. Berry attended to observe the proceedings, as did the complainant, Richard Beliles. However, prior to commencement of the inquiry, Berry, Beliles, and other members of the public and the media were excluded from the proceedings. Williams remained present for the entire inquiry. On August 29, 2007, the KLEC issued an order dismissing the complaint against Williams.

In his October 5 letter to the KLEC, Berry described his attempt to observe the preliminary inquiry as follows:

> The inquiry was conducted entirely behind closed doors with the exception of Senator Williams who was allowed to be present throughout the preliminary inquiry. The exclusion of the pub[l]ic and the media was enough to arouse suspicion, but the exclusion of the complainant (except for a brief appearance as a witness) coupled with the inclusion of the alleged violator throughout the proceeding gave cause for some to speculate that the deck was stacked and the Senator would be exonerated. I was not, and am not, willing to go that far, but I do believe that your Order . . . that exonerated him, was contrary to the undisputed evidence that was presented.

[Record No. 1-2, p. 1] The remainder of Berry's letter further criticized the manner in which the preliminary inquiry was conducted and explained his disagreement with the KLEC's decision to dismiss the complaint against Williams. Berry disseminated copies of his letter to Beliles, members of the media, and others.

In early November 2007, the Kentucky Bar Association Inquiry Commission notified Berry that he was under investigation for a possible violation of the Kentucky Rules of Professional Conduct based on his letter to the KLEC. Berry was directed to address in his response whether his letter violated Supreme Court Rule 3.130(8.2(a)). Rule 8.2(a) provides, in pertinent part, that "[a] lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer." Ky. Sup. Ct. R. 3.130(8.2(a)). In his response to the Inquiry Commission later that month, Berry denied having violated Rule 8.2(a).

Following a lengthy investigation, Berry was notified by letter dated March 16, 2009, that the Inquiry Commission had found his conduct to be in violation of Rule 8.2(a). According to the March 16 letter, Berry violated Rule 8.2(a) "by publicly implying that the Legislative Ethics Commission did not conduct its review appropriately." [Record No. 1-3, p. 1] The letter continued:

> The Inquiry Commission voted to issue this warning letter, in connection with its Order of Dismissal, as provided by SCR 3.185, in lieu of either a Private Admonition or a Charge. This letter is to advise you in the future to conform your conduct to the requirements of the Rules of Professional Conduct.
>
> Pursuant to SCR 3.185, the issuance of this warning letter does not constitute a record of formal discipline. The file will be destroyed after one (1) year.

[*Id.*, pp. 1-2] The disciplinary complaint against Berry was dismissed by Order of Dismissal dated March 14, 2009. Because he disagreed with the Commission's finding that he had violated Rule 8.2(a), Berry sought to appeal the warning letter; however, the Supreme Court Rules do not contemplate such an appeal.

Berry filed this action in November 2009. In his Complaint, Berry alleges that he is still dissatisfied with the manner in which the KLEC resolved its inquiry into Senator Williams' alleged wrongdoing and wishes to further distribute his October 5, 2007 letter. However, based on the Inquiry Commission's March 16 finding, Berry contends that he fears that doing so would subject him to professional discipline. As a result of those fears, Berry claims that his political speech has been chilled, thereby depriving him of his First and Fourteenth Amendment rights. Berry also asserts that Rule 8.2(a) is unconstitutional on its face because it "impermissibly restricts attorneys' speech on the basis of content and/or viewpoint." [Record No. 1, p. 7 ¶ 29] He seeks declarations that the rule is unconstitutional, facially and as applied to his speech. Berry also requests injunctive relief preventing the defendant from enforcing the rule against him "for any future distribution of his October 5, 2007 letter" or "future speech substantially similar in content" to that letter. [*Id.*, p. 7]

## II.

The Federal Rules of Civil Procedure provide that an action must be dismissed "[i]f the court determines at any time that it lacks subject-matter jurisdiction." Fed. R. Civ. P. 12(h)(3). Although the defendant has not raised the issue, the Court concludes that it lacks subject-matter jurisdiction to consider Berry's as-applied challenge pursuant to the *Rooker-Feldman* doctrine.

### A.   *Rooker-Feldman*

The *Rooker-Feldman* doctrine precludes federal district courts from reviewing state court decisions. As the Sixth Circuit has explained, the doctrine's application is limited to cases in which "a plaintiff asserts before a federal district court that a state court judgment . . . was

unconstitutional or in violation of federal law." *McCormick v. Braverman*, 451 F.3d 382, 395 (6th Cir. 2006). The determining factor "is the source of the injury the plaintiff alleges in the federal complaint. If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the court from asserting jurisdiction." *McCormick*, 451 F.3d at 393. Put another way, a federal constitutional challenge to a state court decision is "inextricably intertwined" with that decision, and thus barred under *Rooker-Feldman*,

> if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it. Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment.

*Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987) (Marshall, J., concurring); *see McCormick*, 451 F.3d at 394-95 ("[T]he phrase 'inextricably intertwined' . . . describes the conclusion that a claim asserts an injury whose source is the state court judgment, a claim that is thus barred by *Rooker-Feldman*.").

A preliminary question, of course, is whether the Inquiry Commission's finding that Berry violated Rule 8.2(a) constitutes a state court decision for purposes of the *Rooker-Feldman* analysis. Ample precedent indicates that it does. The Sixth Circuit has repeatedly held that state bar disciplinary proceedings are judicial in nature. *See, e.g.*, *In re Cook*, 551 F.3d 542, 548 (6th Cir. 2009); *Grendell v. Ohio Supreme Court*, 252 F.3d 828, 837 (6th Cir. 2001); *Patmon v. Mich. Supreme Court*, 224 F.3d 504, 510 (6th Cir. 2000). The Supreme Court has likewise "recognized the judicial nature" of such proceedings. *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482 n.15 (1983) (citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457

U.S. 423 (1982)).  Pursuant to the Kentucky Constitution, the state supreme court has jurisdiction over "admission to the bar and the discipline of members of the bar."  Ky. Const. § 116.  The Inquiry Commission is appointed by the Chief Justice of the Kentucky Supreme Court, and its function is "to promptly dispose of all complaints and matters referred to it."  Ky. Sup. Ct. R. 3.140(1), (2).  The Commission examines the evidence and determines whether it warrants only informal disposition, *see* Ky. Sup. Ct. R. 3.185, or whether probable cause exists for a charge to be filed.  *See* Ky. Sup. Ct. R. 3.190.  Thus, the Commission must "investigate, declare, and enforce 'liabilities as they [stood] on present or past facts and under laws supposed already to exist'" — in other words, it must engage in a judicial inquiry.  *Feldman*, 460 U.S. at 479 (quoting *Prentis v. Atl. Coast Line Co.*, 211 U.S. 210, 226 (1908) (alteration by *Feldman* Court)).  Therefore, the Commission's finding that Berry violated Rule 8.2(a) constitutes a state court decision under the *Rooker-Feldman* doctrine.

The fact that Berry challenges a letter – as opposed to a formal judgment or order – does not alter the Court's conclusion.  For purposes of *Rooker-Feldman*, "'the form of the proceeding is not significant.  It is the nature and effect which is controlling.'"  *Raymond v. Moyer*, 501 F.3d 548, 553-54 (6th Cir. 2007) (quoting *Feldman*, 460 U.S. at 482) (letter denying the plaintiff admission to the Ohio bar was a judicial decision, even though no reason was given for the denial and the plaintiff had no chance to respond).  Nor is it of consequence that Berry had no means by which to directly appeal the warning letter.  State courts are competent to adjudicate claims arising under the federal constitution.  *See Feldman*, 460 U.S. at 483 n.16.  Moreover, the Supreme Court has observed that state courts ought to be given "the first opportunity to consider

a state statute or rule in light of federal constitutional arguments." *Id.* (citing *Cardinale v. Louisiana*, 394 U.S. 437, 439 (1969)). The *Feldman* Court also noted that states have a strong interest in regulating the legal profession. *Id.* Considerations of comity thus suggest that this Court is not the proper forum for Berry's as-applied challenge.

Furthermore, it is clear that the March 16 warning letter is the source of Berry's alleged injury. Berry complains that "[t]he threat of imminent prosecution or re-initiation of disciplinary proceedings by Defendant, *as evidenced by Defendant's Warning Letter*," has chilled his political speech in violation of the First and Fourteenth Amendments. [Record No. 1, pp. 6-7 ¶ 27 (emphasis added)] He seeks injunctive relief to prevent the defendant "from enforcing Rule 8.2(a) against [him] for any future distribution of his October 5, 2007 letter, or for [his] future speech substantially similar in content to" that letter. [*Id.*, p. 7] Thus, the Court could not resolve Berry's as-applied challenge without conducting its own inquiry into whether his statement violated the rule. For Berry to prevail, the Court would have to find that the Commission's conclusion on that point was improper. Such second-guessing is inappropriate under *Rooker-Feldman*.

To confirm that resolution of the present case would necessitate detailed review of the Inquiry Commission's decision, the Court need look no further than Berry's motion for summary judgment and reply, in which he argues at length that his statements were not knowingly false or recklessly made — *i.e.*, that he did not violate Rule 8.2(a). [*See* Record No. 22-1, pp. 27-30; Record No. 33, pp. 11-12] Moreover, the reply leaves no doubt as to the source of Berry's alleged injury: "[T]he I.C. and [the defendant] violated Berry's rights by issuing the Warning

Letter, informing Berry he had violated the Rule, and admonishing him to conform his conduct to the Rules." [Record No. 33, p. 12]  Implicit throughout the parties' briefs is the question at the heart of Berry's as-applied challenge:  Did he violate Rule 8.2(a)? That is not a question this Court can properly answer.  Berry's as-applied challenge "succeeds only to the extent that the [Inquiry Commission] wrongly decided the issues before it."  *Pennzoil Co.*, 481 U.S. at 25 (Marshall, J., concurring).  In summary, Berry's claim is inextricably intertwined with the Commission's decision, and the Court is barred by *Rooker-Feldman* from considering it.

      **B.**    **Facial Challenge**

*Rooker-Feldman* does not bar a federal district court from hearing general constitutional challenges to state rules.  *Raymond*, 501 F.3d at 551.  Nevertheless, Berry's claim that Rule 8.2(a) is facially invalid also fails.

On its face, the rule in issue prohibits only knowingly false or recklessly made statements. *See* Ky. Sup. Ct. R. 3.130(8.2(a)).  It is well established that *false* statements made with knowledge or reckless disregard of their falsity are not entitled to First Amendment protection. *See Hustler Magazine v. Falwell*, 485 U.S. 46, 52 (1988); *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 771 (1976); *Garrison v. Louisiana*, 379 U.S. 64, 75 (1964) ("[T]he knowingly false statement and the false statement made with reckless disregard of the truth, do not enjoy constitutional protection.").  The rule's prohibition on such statements is therefore entirely consistent with the First Amendment.

Berry protests that Rule 8.2(a) forbids not only false statements, but also recklessly made statements that may in fact be true.  Berry maintains that, because such speech is protected by

-8-

the First Amendment, Rule 8.2(a) is unconstitutionally overbroad. Before turning to the merits of Berry's constitutional challenge, the Court must address the defendant's contentions that Berry lacks standing and that his claim is not ripe.

   **1. Standing**

According to the defendant, Berry does not have standing to challenge the constitutionality of Rule 8.2(a) because he cannot establish an injury-in-fact. Berry, however, maintains that his speech has been chilled as a result of the warning letter and that he has suffered a constitutionally cognizable injury. Both parties cite *Morrison v. Bd. of Educ. of Boyd Cnty.*, 521 F.3d 602 (6th Cir. 2008), in support of their respective arguments.

In *Morrison*, the plaintiff, a high school student, challenged the constitutionality of an anti-harassment policy adopted by the school district. Morrison alleged that he had refrained from expressing his religious beliefs regarding homosexuality because he feared punishment under the policy. *Id.* at 607. However, there was no evidence to suggest that the policy would have been enforced against him if he had engaged in such speech. *Id.* at 610. The Sixth Circuit held that mere "inhibition of speech" is insufficient to establish standing in the First Amendment context. *Id.* at 609. Rather, in addition to "subjective chill," the plaintiff must also point to "some specific action on the part of the defendant," *id.*, to demonstrate "that a concrete harm — i.e., enforcement of a challenged statute — occurred or is imminent." *Id.* at 610. Because Morrison's claim was based solely on speculation that he might be punished if he chose to speak, the court concluded that he had failed to state an injury-in-fact and thus had no standing to pursue his claim. *See id.*

Here, the defendant argues, Berry has alleged only subjective chill. However, unlike the plaintiff in *Morrison*, who had no indication from the school board whether he might be punished for his intended speech, Berry was warned by the Inquiry Commission that his statement violated Rule 8.2(a) and that "in the future," he should "conform [his] conduct to the requirements of the Rules of Professional Conduct." [Record No. 1-3, p. 1] Although the defendant insists that Berry has no reason to fear future disciplinary action for dissemination of his letter to the KLEC, the warning letter unequivocally stated that Berry had violated the rule and essentially cautioned him not to let it happen again. [*See id.*] Even if the warning letter did not constitute formal discipline under the Supreme Court Rules, it nevertheless represented "specific action" by the Commission from which Berry could reasonably conclude that he would likely be disciplined in the future if he engaged in similar conduct. *Morrison*, 521 F.3d at 609. The alleged chill in this case results not from the mere existence of the challenged rule, as in *Morrison*, *see id.* at 610, but from the defendant's statement that Berry's speech does indeed violate that rule.

The defendant's after-the-fact assurances do not diminish the threat of enforcement. The "Supplemental Warning Letter" which was dated nearly six months after the instant lawsuit was filed clarified which portion of Berry's October 5 letter the Commission had found to violate Rule 8.2(a). And it stated that the purpose of the earlier warning letter was to "advise [Berry] . . . that the . . . rule exists." [Record No. 20-17, p. 3] The letter continued: "The statements that you made implicate this rule, and statements which violate this rule should be avoided." [*Id.*] The Supplemental Warning Letter did not, however, retract the Commission's

-10-

earlier statement that Berry had violated the rule, but instead explained that Berry's "conduct did not rise to the level of a *serious* violation of the rule." [*Id.* (emphasis added)] Nor did the Supplemental Warning Letter indicate that Berry was free to further distribute his letter, or to make statements similar to the one the Commission found offensive, without fear of discipline. [*See id.*] Although the defendant insists that Berry will not be punished for further distribution of his October 5 letter, Berry seeks not only to re-disseminate his letter, but also to make other statements about how the KLEC handled the complaint against Senator Williams. [*See* Record No. 1, p. 7 (seeking injunction barring the defendant from enforcing Rule 8.2(a) against Berry for "future speech substantially similar in content to the October 5 letter")] Based on the Commission's stated conclusion that such speech violates Rule 8.2(a), as well as its warning to Berry that he should conform his conduct to the Rules in the future, Berry has established a credible threat that Rule 8.2(a) will be enforced against him. Accordingly, he has standing to challenge the constitutionality of the rule. *See Morrison*, 521 F.3d at 610.

### 2. Ripeness

The defendant also contends that Berry's constitutional challenge fails because it is not ripe. To determine whether a First Amendment pre-enforcement challenge is ripe for review, the Court must consider "how imminent the threat of prosecution is and whether the plaintiff has sufficiently alleged an intention to refuse to comply with the [challenged rule]." *Norton v. Ashcroft*, 298 F.3d 547, 554 (6th Cir. 2002). The Sixth Circuit has noted that "the ripeness requirement is somewhat relaxed in the First Amendment context"; however, a plaintiff must still demonstrate "a credible fear of enforcement." *Id.* Thus, the ripeness and standing inquiries in

this case overlap to some degree. *See Morrison*, 521 F.3d at 610. As explained above, Berry has shown a credible fear of enforcement. Moreover, he intends to continue questioning the manner in which the KLEC conducted its inquiry of Senator Williams. [*See* Record No. 1, p. 7] Thus, his claim is ripe. *See Norton*, 298 F.3d at 554.

### 3. Overbreadth

Although Berry has standing to challenge the constitutionality of Rule 8.2(a) and the claim is ripe, his facial challenge is unavailing. The parties agree that, because the rule restricts speech based on content, it is subject to strict scrutiny and "must be narrowly tailored to promote a compelling [g]overnment interest." *United States v. Playboy Entm't Group*, 529 U.S. 803, 813 (2000). [*See* Record No. 20-1, p. 2; Record No. 22-1, p. 23] In the First Amendment context, a rule may be struck down as facially overbroad if "a 'substantial number' of its applications are unconstitutional," as judged against its constitutionally permissible applications. *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 n.6 (2008) (quoting *New York v. Ferber*, 458 U.S. 747, 769 (1982)). However, the doctrine of overbreadth is "'strong medicine,'" to be employed "'only as a last resort.'" *Ferber*, 458 U.S. at 769. Its application is not warranted here.

At the outset, the Court must identify the scope of Rule 8.2(a), since "it is impossible to determine whether a [rule] reaches too far without first knowing what [it] covers." *United States v. Williams*, 128 S. Ct. 1830, 1838 (2008) (explaining that "[t]he first step in overbreadth analysis is to construe the challenged statute"). As explained previously, the rule forbids false statements made with knowledge or reckless disregard of their falsity, but this prohibition

presents no First Amendment concerns, as such statements are unprotected in any event. *See Garrison*, 379 U.S. at 75. Although some courts have construed rules identical to SCR 8.2(a) (which itself tracks the language of ABA Model Rule of Professional Conduct 8.2(a)) to encompass *only* false statements, the Court agrees with Berry that the plain language of the rule is not so limited.

Rule 8.2(a) provides that "[a] lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity." Ky. Sup. Ct. R. 3.130(8.2(a)). The rule could have been explicitly limited to false statements by inserting the word "false" before "statement that the lawyer knows to be false," or implicitly by prohibiting knowingly false statements and statements made with reckless disregard as to their falsity (not truth). However, the rule as written contains no such limitation. In any event, as Berry points out, the Kentucky Supreme Court has indicated that the rule covers recklessly made statements regardless of their truth. *See Ky. Bar Ass'n v. Waller*, 929 S.W.2d 181, 183 (Ky. 1996) ("Respondent appears to believe that truth or some concept akin to truth, such as accuracy or correctness, is a defense to the charge against him. In this respect he has totally missed the point."). Thus, Rule 8.2(a) reaches some constitutionally-protected speech: recklessly made statements that happen to be true.

The Court concludes, however, that the rule is not unconstitutionally overbroad. Restrictions on lawyers' speech, including rules identical to the one at issue here, have repeatedly withstood constitutional challenge on the ground that states have a compelling interest in maintaining public confidence in the judiciary. *See, e.g.*, *In re Palmisano*, 70 F.3d 483, 487

(7th Cir. 1995) ("Some judges are dishonest; their identification and removal is a matter of high priority in order to promote a justified public confidence in the judicial system. Indiscriminate accusations of dishonesty, by contrast, do not help cleanse the judicial system of miscreants yet do impair its functioning . . . ."); *Anthony v. Va. State Bar*, 621 S.E.2d 121, 126 (Va. 2005) ("[L]imitations on lawyers' rights of free speech are based upon a lawyer's obligation to abstain from public debate that will obstruct the administration of justice."); *Fla. Bar v. Ray*, 797 So. 2d 556, 560 (Fla. 2001) ("Although attorneys play an important role in exposing valid problems within the judicial system, statements impugning the integrity of a judge, when made with reckless disregard as to their truth or falsity, erode public confidence in the judicial system without assisting to publicize problems that legitimately deserve attention."). The commentary to Rule 8.2 explains that "false statements by a lawyer can unfairly undermine public confidence in the administration of justice." Ky. Sup. Ct. R. 3.130(8.2(a)), cmt. 1 (1989). By prohibiting any reckless statement as to the qualifications or integrity of a judicial officer, Rule 8.2(a) decreases the likelihood that false statements will occur. On its face, the rule does not bar honest, informed criticism. It merely requires lawyers "to speak with greater care and civility than is the norm" in political debate. *In re Palmisano*, 70 F.3d at 487 (citing *Fla. Bar v. Went for It, Inc.*, 115 S. Ct. 2371 (1995); *Gentile v. Nev. Bar*, 501 U.S. 1030, 1065-76 (1991)). Such a requirement is reasonable, given that lawyers are members of a regulated profession; as the Supreme Court has observed, "'[m]embership in the bar is a privilege burdened with conditions.'" *Gentile*, 501 U.S. at 1066 (quoting *In re Rouss*, 221 N.E. 782, 783 (1917)). Thus, although lawyers "do[] not surrender [their] freedom of expression" upon being admitted to the

-14-

bar, they nonetheless "must temper [their] criticisms in accordance with professional standards of conduct." *U.S. Dist. Court for the E. Dist. of Wash. v. Sandlin*, 12 F.3d 861, 866 (9th Cir. 1993); *see also Waller*, 929 S.W.2d at 183 (explaining that "scurrilous language" about a judge is forbidden under Rule 8.2(a) regardless of its truth because "such language promotes disrespect for the law and for the judicial system," and "[o]fficers of the court are obligated to uphold the dignity of the Court of Justice").

Rule 8.2(a) does not bar criticism of judicial officials altogether. Instead, it merely forbids baseless, uninformed attacks on such officials. Although the rule extends to some constitutionally protected speech — namely, reckless true statements — it does not reach a "substantial number of impermissible applications," *Ferber*, 458 U.S. at 771, and is narrowly tailored to serve the state's compelling interest in maintaining public confidence in its judiciary. The subject rule therefore survives strict scrutiny, and Berry's facial challenge fails.

### III.

Pursuant to the *Rooker-Feldman* doctrine, the Court lacks subject-matter jurisdiction over Berry's as-applied challenge to Kentucky Supreme Court Rule 8.2(a). Furthermore, Berry's facial challenge to Rule 8.2(a) fails because the rule is narrowly tailored to serve a compelling state interest. Accordingly, it is hereby

**ORDERED** as follows:

(1) Defendant's Motion for Summary Judgment [Record No. 20] is **GRANTED** with respect to Berry's second cause of action which asserts a facial challenge to Kentucky Supreme

Court Rule 3.130(8.2(a)). The defendant's motion is **DENIED** as moot insofar as the defendant seeks summary judgment on Berry's first cause of action.

(2) Plaintiff John M. Berry, Jr.'s Motion for Summary Judgment [Record No. 22] is **DENIED**.

(3) Berry's first cause of action is **DISMISSED**, without prejudice, for lack of subject-matter jurisdiction.

(4) A separate Judgment will be entered this date in favor of Defendant Michael J. Schmitt in his official capacity as Chair of the Kentucky Bar Association Inquiry Commission.

This 12th day of April, 2011.

Signed By:
*Danny C. Reeves* DCR
United States District Judge